UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

PETER GRAZIANO,

                                          Petitioner,


              vs.
                                                            9:04-CV-84
WILLIAM LAPE,                                               (J. Kahn)
Superintendent of Marcy Correctional Facility
                                          Respondent.

_____

PETER GRAZIANO, Petitioner *Pro Se*
ALYSON J. GILL, Assistant Attorney General for Respondent

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

        This matter has been referred to me for Report and Recommendation by the

Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).  Petitioner brings this action for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254, challenging a denial of parole by the

New York State Board of Parole.

        In 1986, a jury convicted petitioner of Murder, Second Degree.  Petitioner was

sentenced to an indeterminate term of imprisonment of fifteen years to life.

Petitioner has been incarcerated since June 1986.  Petitioner first became eligible for

parole in 2001.  Parole was denied after a hearing.  The Parole Board set petitioner's

next hearing date for February 2003.  While in custody at the Marcy Correctional

Facility, petitioner filed this petition for a writ of habeas corpus, pursuant to 28

U.S.C. § 2254.  (Dkt. No. 1) ("Petition").

Petitioner raises four grounds in support of his petition:

1.  The Division of Parole and the New York State court system deprived petitioner of due process and equal protection because they failed to correct a defect in the February 2001 parole decision (Petition ¶ 9(A));

2.  Petitioner was "granted" parole in February 2001, and has been deprived of his "liberty right to such release" (Petition ¶ 9(B));

3.  Petitioner was denied due process and "the right to redress his grievances" by the Board of Parole and the New York State courts (Petition ¶ 9(C));

4.  Petitioner claims that prisoners are systematically denied due process and equal protection by the New York State courts (Petition ¶ 9(D)).

Petitioner has filed a memorandum of law and appendix in support of his application.  (Dkt. No. 4).  Respondent has filed his answer, together with a memorandum of law and the pertinent State Court Records ("S.C.R.").[1]  (Dkt. No. 10).  For the following reasons, this court will recommend denying the petition.

## DISCUSSION

## 1.  Facts and Procedural Background

In 1986, petitioner was convicted by a jury of Second Degree Murder after shooting a man to death at a pizzeria.  (S.C.R. 2-3)[2].  Petitioner was sentenced to an

---

[1]State Court Records are listed on the second page of respondent's answer.  (Dkt. No. 10). The State Court Records submitted by respondent are "Bates-stamped".  However, it appears that two consecutive pages have been stamped with the number "51".  The court will cite these pages as 51 and 51(A).

[2]The first nine pages of the State Court Records are the transcript of petitioner's February 2001 Parole Board hearing.

indeterminate term of incarceration of fifteen years to life.  (Dkt. No. 4 at 1).

Petitioner became eligible for parole in 2001, and a Parole Board hearing was conducted by three commissioners on February 27, 2001.  (S.C.R. 1).  The commissioners asked petitioner about the circumstances of his crime, his post-release plans, and the programs in which petitioner participated while incarcerated.  (S.C.R. 2-7).  At the conclusion of the hearing, parole was denied, and another hearing was recommended for February 2003.  (S.C.R. 8).  The transcript of the 2001 hearing includes questions and comments from all three commissioners, but only Commissioner Roslyn Block read the Board's decision denying parole into the record.  (S.C.R. 2-7, 8).  A written version of the decision was issued on March 5, 2001, also stating that parole had been denied.  (S.C.R. 19).

Petitioner appealed the denial of parole to the Appeals Unit of the New York State Division of Parole.  (S.C.R. 11-27).  Petitioner argued that the verbal decision on February 27, 2001 and the written decision that he received after the hearing reflected two different decisions by the Parole Board because the language was not exactly the same in both instances.  (S.C.R. 15-16).  Petitioner also argued that because the transcript of the February 2001 hearing did not show that either of the other two commissioners concurred in Commissioner Block's verbal denial of parole, the remaining commissioners' votes should be construed as voting in favor of granting parole.  (S.C.R. 17-18).  Petitioner submitted excerpts from the transcripts

3

of other inmates' parole denials, showing that when a commissioner read a decision into the record, at least one other commissioner "concurred" in the decision. (S.C.R. 22-27). On December 31, 2001, the Appeals Unit wrote a letter to petitioner, stating that the Appeals Unit was unable to render a decision, and that petitioner's administrative remedy was, thus, "deemed" exhausted. (S.C.R. 28).

In December 2001, petitioner appealed the decision of the Parole Board by filing a petition for habeas corpus in the Oneida County Supreme Court. (S.C.R. 29-39). Petitioner argued that only one of the commissioners at his parole hearing voted to deny him parole, and that "[t]he failure of the Three Commissioner Panel to provide a quorum or majority in their denial of parole entitles [petitioner] to immediate release to parole supervision." (S.C.R. 33). In January 2002, the Oneida County Supreme Court denied petitioner's application *sua sponte* as unexhausted.[3,4] (S.C.R. 40-41).

In February 2002, petitioner made a motion to renew and reargue his habeas corpus application in the Oneida County Supreme Court. (S.C.R. 42-51). Petitioner

_____

[3]The respondent in petitioner's Oneida County Supreme Court case was not ordered to answer petitioner's application. In an appendix submitted to this court by petitioner, a letter from the office of the New York Attorney General explained that the Oneida County Supreme Court "denied the writ and dismissed the petition without notice to, or ordering service upon, the named respondent. . . Thus, respondent was not served and did not appear in the proceeding below." (Dkt. No. 4, Appendix, Exhibit Q). Because the respondent had not been served in the Oneida County Supreme Court, the respondent also did not appear in the Appellate Division, Fourth Department.

[4]Petitioner filed his petition for habeas corpus in the Oneida County Supreme Court prior to receiving the letter from the Appeals Unit.

submitted evidence that the Appeals Unit had deemed his appeal exhausted.  (S.C.R. 49).    Petitioner also clarified his argument regarding the commissioners' votes. (S.C.R. 45-48).  Petitioner argued that all three commissioners were present, but that the silence of two of the commissioners should be construed as affirmative votes in favor of granting parole.  (S.C.R. 47).  In March 2002, Oneida County Supreme Court granted the motion for renewal and reargument, but ultimately denied petitioner's application for habeas corpus.  (S.C.R. 51(A)-53).  The court found that petitioner had exhausted his appeal at the administrative level, but that petitioner had not supplied a legitimate legal basis to construe the two commissioners' silence as votes in favor of parole.[5]  (S.C.R. 52).  In June 2003, the Appellate Division, Fourth Department affirmed the Oneida County Supreme Court's decision.[6]  (S.C.R. 54-56). In September 2003, the New York Court of Appeals denied leave to appeal.  (S.C.R. 57).

Petitioner filed this case in January 2004.  (Dkt. No. 1).  Respondent filed his response with a memorandum of law in June 2004.  (Dkt. No. 10).  Respondent's memorandum of law raises three arguments, including an argument that the petition

---

[5]Petitioner cited a case, *Heimbach v. State*, for the proposition that silence on a vote would be construed as an affirmative vote.  The case involved the counting of votes in the New York State Senate, and the Oneida County Supreme Court found that the practice in the state senate did not bind the Parole Board.  (S.C.R. 52).

[6]As stated above, respondent did not file any papers in the matter before the Appellate Division because he had not been a party to the proceeding in Oneida County Supreme Court. (Dkt. No. 4, Appendix, Exhibit Q).

for habeas corpus is moot because petitioner was afforded another parole hearing on July 8, 2003. (Dkt. No. 10 at 4). In July 2004, petitioner made a motion to amend his petition to include the 2003 denial of parole. (Dkt. No. 11). This court denied the motion as premature, because petitioner had a pending Article 78 petition challenging the 2003 parole denial. (Dkt. No. 11). In July 2004, petitioner appealed this court's decision to United States District Judge Lawrence E. Kahn.[7] (Dkt. No. 12). In February 2005, Judge Kahn affirmed this court's decision. (Dkt. No. 17). Petitioner then made a motion for reconsideration of Judge Kahn's February 2005 decision. (Dkt. No. 18). In May 2005, Judge Kahn denied petitioner's motion for reconsideration. (Dkt. No. 22).

In an affidavit in support of the motion for reconsideration, petitioner stated that he appeared for a third Board of Parole hearing on February 1, 2005. (Dkt. No. 19 at 2). Petitioner submitted documentation showing that parole was denied, and that his next appearance would be in February 2007. (Dkt. No. 19 at 5). Petitioner also submitted documents indicating his intention to challenge the February 2005 denial of parole in state court. (Dkt. No. 19 at 6). The status of petitioner's Article 78 proceedings related to the 2003 denial of parole and his appeal of the 2005 denial is unclear. The court also does not have any information related to petitioner's

---

[7]As of July 2004, when petitioner filed the appeal of this court's decision, his appeal of the July 2003 parole denial was still pending in state court. (Dkt. No. 12, ¶ 6). It is unclear when the appeal was finally resolved. Petitioner has not filed a motion to amend his complaint subsequent to the resolution of the appeal of the July 2003 parole denial.

February 2007 parole hearing, though it appears from the New York State

Department of Correctional Services website that petitioner remains in custody at

Marcy Correctional Facility.  *See* http://nysdocslookup.docs.state.ny.us/.

## 2.  Mootness

This petition challenges ***only*** the 2001 denial of parole.  Petitioner did not

move to amend the petition when the appeal of the 2003 denial of parole was

completed in state court.  It is unclear whether petitioner appealed the 2005 denial of

parole, but to the extent that he did appeal, petitioner has not moved to include any

claims related to that appeal in this case.  It is also unclear from the papers whether

or not a parole hearing occurred in 2007.  Respondent argues that since petitioner

"reappeared before the Parole Board . . . the petition is moot and must be dismissed."

(Dkt. No. 10 at 4).  Petitioner has had at least two Parole Board hearings since the

2001 denial.

Petitioner's central claim is that because two of the commissioners did not put

their vote on the record during the oral decision on February 27, 2001, their silence

should be construed as votes in favor of parole.  Therefore, according to petitioner,

he "was granted parole release by a majority vote" despite the oral decision read into

the record by one of the three commissioners.  Petitioner argues that the denial of

parole was error, and that he is currently incarcerated in violation of the Constitution

in light of the previous "grant" of parole, and despite the Parole Board's later denials

of parole.

"A case becomes moot when it no longer satisfies the 'case or controversy' requirement of Article III, Section 2 of the Constitution.  In order to satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision."  *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999) (citing *Spencer v. Kemna*, 523 U.S. 1, 7, 118 S. Ct. 978 (1998)).  Generally, "if an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, we must dismiss the case."  *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006).

A case is not moot where the questions presented are "capable of repetition, yet evading review."  *Sosna v. Iowa*, 419 U.S. 393, 400, 95 S.Ct. 553 (1975) (internal citations omitted); *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 546, 96 S. Ct. 2791 (1976) (citations omitted).  To show that a case falls within this exception, a party must demonstrate that "'(1) the challenged action was in duration too short to be fully litigated prior to its cessation or expiration, and (2) there was reasonable expectation that the same complaining party would be subjected to the same action again.'"  *Granato v. Bane*, 74 F.3d 406, 4111 (2d Cir. 1996) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S. Ct. 1181 (1982)).

It is well settled under New York law that "any challenge to a parole board

hearing must be dismissed if petitioner is reconsidered for parole." *Boddie v. New York State Division of Parole*, 285 F. Supp. 2d 421, 427 (S.D.N.Y. 2003). *See also*, *Robles v. Dennison*, 2007 U.S. Dist. LEXIS 55061, *4 (N.D.N.Y. July 30, 2007); *Aviles v. Travis*, 282 A.D.2d 787, 722 N.Y.S.2d 436 (3d Dep't 2001); *Jhang v. Travis*, 285 A.D.2d 874, 727 N.Y.S.2d 361 (3d Dep't 2001). While New York law is clear, "the case law is not settled on whether a subsequent parole hearing renders moot a federal habeas petition to review an earlier parole denial." *Siao-Pao v. Mazzuca*, 442 F. Supp. 2d 148, 153 (S.D.N.Y. 2006) (internal citations omitted). *See also, Boddie*, 285 F. Supp. 2d at 427; and *Robles v. Dennison*, 2007 U.S. Dist. LEXIS 55061, *4-6 (N.D.N.Y. July 30, 2007).

This court need not decide whether this petition has been rendered moot by the subsequent parole hearings. *Siao-Pao*, 442 F. Supp. 2d at 153; *Boddie*, 285 F. Supp. 2d at 427-28. Where a petitioner's claims are clearly without merit, "potentially complex and difficult issues about the various obstacles to reaching the merits should not be allowed to obscure the fact that the underlying claims are totally without merit." *Boddie*, 285 F. Supp. 2d at 428 (*quoting Brown v. Thomas*, 2003 U.S. Dist. LEXIS 3396, No. 02 Civ. 9257, *1 (S.D.N.Y. March 10, 2003)). *See also*, *Robles*, 2007 U.S. Dist. LEXIS 55061 at *6.

**3.  Exhaustion**

Before the court reaches the merits, the court must point out that petitioner

failed to exhaust any of his claims in state court.  Section 2254(b)(1) requires that a petitioner exhaust all of his available state court remedies prior to filing an application for habeas relief. *See also Pena v. Ellis*, 07-CV-2736, 2007 U.S. Dist. LEXIS 93957, *8 (E.D.N.Y. Dec. 21, 2007).  In order to exhaust a denial of parole under New York law, the inmate must first file an administrative appeal with the Division of Parole Appeals Unit, and if that application is denied, the inmate must seek relief in State court pursuant to N.Y. CIV. PRAC. L. & R., Article 78. *Id. See also Robles v. Williams*, 02 Civ. 6102, 2007 U.S. Dist. LEXIS 62052, *6 (S.D.N.Y. Aug. 22, 2007).  If the Article 78 petition is denied, petitioner must appeal that denial to the highest court capable of reviewing it.  *Pena, supra.*

In this case, petitioner exhausted his remedies at the Division of Parole level, however, he did not bring an Article 78 proceeding.  Instead, petitioner brought a petition for state habeas corpus, raising the first two issues that he raises in this petition.  Petitioner now appears to argue that the Oneida County Supreme Court judge failed to convert petitioner's state habeas petition into an Article 78 proceeding in violation of petitioner's right to due process. (Dkt. No. 4, Memorandum of Law at 11-12).

Because petitioner never brought the appropriate state court challenge to his parole denial, it is arguable that he did not raise any of his current claims in state

court.[8]  However, the court notes that the Oneida County Supreme Court judge did

ultimately decide petitioner's first two grounds for relief on the merits, and petitioner

did appeal those claims to the highest court available.  Thus, petitioner could have

exhausted his first two claims.  Petitioner has never raised his last two grounds in any

state court, and thus, at best, he presents this court with a "mixed petition,"

containing both exhausted and unexhausted claims.[9]

     The habeas statute provides that an application for habeas corpus may be

denied on the merits notwithstanding the failure to exhaust state court remedies.  28

U.S.C. § 2254(b)(2).  After a review of petitioner's claims, this court finds that

whether  petitioner failed to exhaust any or all of his claims, they may ***all be***

***dismissed on the merits***.

     Although the Second Circuit has not specifically articulated a standard for this

type of dismissal, lower courts have discussed two standards to determine whether a

claim should be dismissed on the merits, notwithstanding the failure to exhaust.  *See*

*Hernandez v. Conway*, 285 F. Supp. 2d 266, 273 n.4 (W.D.N.Y. 2007) (citing cases).

---

[8] Petitioner appears to have had a specific reason for failing to bring an Article 78
proceeding in State court.  In his state court habeas application, petitioner claimed that he was
bringing the habeas petition because a favorable decision in an Article 78 proceeding would only
result in a "new hearing," while a favorable decision in a habeas corpus application could result
in petitioner's immediate release.  Petitioner has always argued, albeit improperly, that
immediate release and not a new hearing is the appropriate relief in his case.

[9] Respondent has not raised petitioner's failure to exhaust as a defense in this case,
however, the court would note that the federal habeas statute provides that the state does not
waive the exhaustion requirement unless counsel "expressly" waives it. 28 U.S.C. § 2254(b)(3).

A majority of the lower courts use the "patently frivolous" standard, while a minority of the courts use a "non-meritorious" standard, dismissing a claim when it is "perfectly clear that the [petitioner] does not raise even a colorable federal claim." *Id.* (citing *inter alia Naranjo v. Filion*, 02 Civ. 5449, 2003 U.S. Dist. LEXIS 6287, *30 (S.D.N.Y. April 16, 2003)(patently frivolous standard); *Basnight v. Keane*, 99-CV-5907, 2001 U.S. Dist. LEXIS 11155, *14-15 & n.1 (E.D.N.Y. July 31, 2001)(non-meritorious standard)).

In finding that a non-meritorious standard applied, the court in *Basnight* cited the Supreme Court decision in *Duncan v. Walker*, 533 U.S. 167, 183 (2001).  In *dicta* from *Duncan*, the Supreme Court stated that "the AEDPA gives a district court the alternative of simply denying a petition containing ***unexhausted but unmeritorious claims*.**" *Id.* (emphasis added).  In this case, the court finds that petitioner's claims may be dismissed on the merits under either standard.[10]

## 4.  Grounds One and Two

Petitioner's first two claims are interrelated.  He claims that he was denied due process and equal protection because there was a "defect" in petitioner's 2001 parole

---

[10]  The court would also point out that even if the court were to consider petitioner's claims under the AEDPA standard for dismissal (which is more deferential to the state court), petitioner's claims would still be dismissed.  The AEDPA standard states that in order for a habeas petitioner to succeed, the state court must have decided the federal claim on the merits, and that decision must have resulted in an unreasonable application of clearly established federal law, or must have been based on an unreasonable determination of the facts. 28 U.S.C. § 2254 (d)(1)-(d)(2). *See Williams v. Taylor*, 529 U.S. 362, 403 (2000).

hearing.  Petitioner claims that this "defect" resulted in a decision in favor of granting petitioner's parole, and that he should have been released as a result.

In conducting habeas review, a federal court is limited to determining whether the petitioner's rights have been violated under the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state law questions." *Id.* at 68.  Errors of state law do not entitle a petitioner to federal habeas relief. *Id.*

In this case, petitioner states that he has been deprived of his Fourteenth Amendment rights to due process and equal protection, but his claims are based only upon his erroneous view that there was an error in the procedure used at his 2001 parole hearing.  Petitioner claims, relying upon a state court case, that because only one Commissioner read the decision denying parole into the record, the other two Commissioners must have voted in favor of granting parole.  Thus, in petitioner's view, he should have been released.  Petitioner then argues that the Oneida County Supreme Court agreed with petitioner that his "parole hearing was not decided by a majority of the panel,"[11] but that the lower court as well as the appeal courts failed to remedy the violation.

---

[11] Petitioner misstates the decision of the Oneida County Supreme Court.  The court summarized petitioner's argument, and then found no legal basis for his claim. (S.C.R. 52).  The Supreme Court Judge did not "agree" with petitioner.

"There is no constitutional or inherent right of a convicted person to be conditionally released prior to the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S.1, 7 (1979). "Federal habeas review of New York parole decisions is limited to the question of whether the Parole Board acted 'for arbitrary or impermissible reasons.'" *Siao-Pao*, 442 F. Supp. 2d at 156 (internal citation omitted). Petitioner's argument in state court was purely procedural. He did not claim that the ***substantive*** reasons for the denial of parole were arbitrary or unreasonable. His only claim was that the "silence" of the two Commissioners should have been interpreted as votes in favor of parole. To the extent that petitioner is attempting to make an argument based upon the parole regulations and state law, there is simply no federal question to decide.

The court would also point out that petitioner's claim is completely frivolous in any event. The regulations governing the parole hearing or parole "interview" provide that "the parole release interview shall be conducted by a panel of at least ***two*** members of the Board of Parole." N.Y. CODES RULES & REGS. (NYCRR), tit. 9, § 8002.2 (emphasis added). Parole release decisions are governed by N.Y. CODES RULES & REGS. (NYCRR), tit. 9, § 8002.3. This regulation provides for the factors to be considered in release decisions. This section also provides that "[i]f parole is not granted, the inmate shall be informed in writing, within two weeks of his interview, of the factors and reasons in detail for such denial." 9 N.Y.C.R.R. §

8002.3(d).  There is ***no requirement*** that the denial of parole be decided by any particular vote or even by a "majority" vote, regardless of the fact that there may have been more than two Commissioners present at a particular hearing.

This rationale is supported by the fact that the regulations provide that the "appeal" of a parole decision "shall be considered by three members of the Board of Parole." 9 N.Y.C.R.R. §8006.4(d).  The regulation specifically requires that "[t]he appeal shall be decided by ***a majority of the three board members who review the appeal.***" *Id.* (emphasis added).  A well-established principle of statutory and regulatory interpretation states that if the Board of Parole explicitly included a provision for a majority vote in the appeals section of the regulations, it must have meant to exclude such a requirement in the section governing parole release. *See State Farm Mut. Ins. Co. v. Mallela*, 2002 U.S. Dist. EXIS 25187, *30-32 (E.D.N.Y. Nov. 21, 2002)(discussing the interpretation of New York statutes and regulations) (quoting *Presbyterian Hosp. v. Md. Cas. Co.*, 90 N.Y.2d 274, 284-85, 660 N.Y.S.2d 536, 683 N.E.2d 1 (1997)).  This interpretation is clearly consistent with the language of section 8002.2 which requires at least two Commissioners at a parole release interview but no provision for a "vote" of any kind.  Thus, petitioner's argument that his parole decision was faulty because there was no "majority" is frivolous.

Petitioner also attempted to argue that because two of the Commissioners were

"silent" on the record, they should have been counted as voting in favor of parole.  In his state court habeas corpus application, petitioner cited *Heimbach v. State*, 89 A.D.2d 138, 454 N.Y.S.2d 997 (2d Dep't 1982), *affd*, 59 N.Y.2d 891, 465 N.Y.S.2d 936, 452 N.E.2d 1254 (1983).  As noted by the Oneida County Court judge, petitioner's reliance upon *Heimbach* was misplaced. (S.C.R. 52).  The court in *Heimbach* was determining the propriety of a "fast roll call" in the New York State Senate.  The issue was whether a senator who had declared himself present, but later left the room, could be considered as having voted "in the affirmative" during a "fast roll call" when he did not respond. *Id.* 89 A.D.2d at 147-48.  The court cited a "general principle[]" of parliamentary law that Senators who are present in the chamber and who are not recorded as voting are "presumed to have voted in the affirmative." *Id.* at 147.

There is absolutely no basis for applying this rule of "parliamentary" law to the Parole Board or to petitioner's case.  It is clear that petitioner was denied parole. The decision was read into the record, and petitioner received a written decision within the appropriate amount of time.  Petitioner has submitted the transcripts of other inmates' parole hearings in which the Commissioners' individual concurrences were noted on the transcript.  The fact that in other cases, the record reflected concurrences by other Commissioners does not convert this claim into one for an "equal protection" violation and does not affect this court's decision in any way.

**5.  Grounds Three and Four**

Petitioner alleges in his third and fourth grounds that the Parole Board and the New York State Courts have denied him the "right to redress his grievances," (Petition ¶ 9(C)), and that the courts are violating his rights to Due Process and Equal Protection by failing to release petitioner (Petition ¶ 9(D)).  Plaintiff appears to claim that he is being denied his constitutional rights because the courts to which he appealed his denial of parole did not overturn the decision.  As stated above, petitioner has never brought either of these claims in State court.

Since this court has found that plaintiff's central claim is completely meritless, the failure of the appeals courts to grant petitioner an evidentiary hearing or to overturn the denial cannot rise to the level of a constitutional violation.  Petitioner has already had three more parole hearings since 2001, and has been denied each time.  Clearly, the Commissioners did not intend to release him at the 2001 hearing, and petitioner's attempt to turn what he believes is a "technicality" into a vote for release is frivolous.

"[F]ederal habeas relief is not available to redress alleged procedural errors in state post-conviction proceedings."  *Jones v. Duncan*, 162 F. Supp. 2d 204, 217 (S.D.N.Y. 2001). *See also Fuzia v. Lewin*, 05-CV-773, 2006 U.S. Dist. LEXIS 26732, *11-12 (E.D.N.Y. April 21, 2006).  Petitioner's allegation of due process and equal protection violations by the State courts failing to convert his habeas petition

17

to an Article 78 proceeding and their alleged failure to grant him evidentiary or other hearings on his claims are not independent grounds for relief in a federal habeas petition.  Thus, petitioner's third and fourth grounds may be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 13, 2008

Hon. Gustave J. DiBianco
U.S. Magistrate Judge